Your Honor, good morning. My name is Gary Bertram. I represent the appellant, Mr. Caceres, in this case. I'd like to reserve two minutes for rebuttal, if that's okay. All right. As soon as Mr. Caceres pled guilty to the two counts with the mandatory minimum drug quantities in the information, defense counsel's number one job at that point was to make sure he qualified for a safety valve. These were 10-year mandatory minimum cases. Four of the five safety valve elements were already – were not in dispute in this case. The only one which was in dispute was the truthful disclosure element. Instead of defense counsel getting to work on safety valve in a timely fashion and working to make sure safety valve was met in this case, defense counsel waited eight months before doing anything with respect to trying to satisfy safety valve. And then once counsel did get to work on it, he didn't do the follow-up necessary to make sure that Mr. Caceres was able to receive a sentence less than 10 years, which the district court said it would have imposed had safety valve been met in this case. Counsel, can I just direct you to the main thing? I think that there's some issues with how counsel represented your client below. I also think there's some issues with the district court's decision. But what I'm not clear about is how any of this prejudiced your client, given what we have been told would have been said had the attorney gotten things in the record in a timely manner. I thought that question might be coming early, and there it is. I mean, if he had said in that supplemental declaration, yep, I lied, here's the real story, then maybe we would be looking at that and thinking, ah, that might have made a difference, but he kind of doesn't say that. He just gives more details for the story he already gave. He does, and I think I put those in the declaration, which I provided once I was appointed. I got that from Mr. Caceres. The problem is that safety valve, it just wasn't done. It wasn't finished. Mr. Caceres went to sentencing in this case, in a 10-year mandatory minimum case, and safety valve wasn't done. The attorney showed up in November for sentencing and told the district judge that it wasn't done, he needed more time for this. The district judge was very critical of that, very upset. But the problem is that it wasn't done, and the reason why that matters in this case is because Mr. Caceres had two chances to get safety valve in this case, to convince the government that he was making a truthful and complete statement about the offense. But if that wasn't going to work, and the prosecutor certainly had doubts in this case about his account in the first proper letter, then make a good record for the district court to do its independent analysis of this same question. But what in that supplemental information that you've put in the record indicates that the court would have reached a different conclusion? Well, the problem with the district court's ability to decide this is when everyone showed up in November for sentencing, the district court had only read the government's side. The government filed its sentencing memorandum six days before the October hearing. Defense counsel submitted his proffer to the government the same day, and at that point realized that he had a real problem, your safety valve wasn't being recommended in this case. And instead of defense counsel filing a supplemental proffer with the government or in the record with the district court, or setting up a debriefing where this all could be hashed out at one time in 45 minutes in an office at the U.S. Attorney's Office, counsel showed up with the strategy, and it's not a strategy, of just arguing this matter to the district court at sentencing. And it's clear when you read the sentencing transcript that the government had read the government's submission. It had read nothing from the defense. And so as far as the district… What was there to have read from the defense? I'm sorry? What was there to have read from the defense? Defense counsel should have filed a detailed… Okay, but should have filed, that doesn't mean that the district court was only reading one side of the case. That's correct, but the district court didn't have a copy of the proffer letter at the time sentencing occurred. Right, but your argument seems to suggest the district court was only reading the government stuff and was ignoring the defense stuff. But then you're saying the defense actually didn't file anything. So the district court didn't make a mistake of only selectively reading. Of course not, Your Honor. I misspoke. Defendant filed a sentencing memorandum, but nothing in the memorandum dealt with the safety valve issue. And that's a better answer to your question. Right, and I get that. And so I keep coming back to, but you have now put in the record what would have been said had the underlying attorney done the right thing. Right. And what in there shows us that any sort of different decision would have been reached? Well, there were additional facts beyond what the prosecutor was given with the proffer letter. What this case really called for was a debriefing. This is like the last case. This is a drug import case. We have hundreds of these every year in San Diego. Right. I'm really struggling with the same thing that Judge Forrest is in that I think counsel could have done more. Normally the debriefings are done in person. That's the best way. And so the government can ask the questions and address whatever concerns you had. But this was during that somewhat sensitive COVID period where we weren't meeting in person. And so it did put the defense counsel in the difficult position of having to sort of address why the government didn't think that the story was credible. But instead of saying, well, I've now consulted with my client, and he admits that he was untruthful, and here's the truth, counsel really doubled down because he didn't have anything contrary from his client, doubled down on the story and provided more details. And the court fully considered that. It was a very lively engagement, a back and forth between the district court and defense counsel at sentencing. So whatever admissions the defendant could have made regarding why his story wasn't credible, instead he doubled down on that and said, this was really the story. And here are some additional details for you to consider. And the district court considered all of that and still found that it wasn't credible. So I still don't know what would have made the difference because he keeps sticking with the same story, and that story was not believed by the government and apparently by the court. The additional facts he provided, that I provided in the declaration, should have been provided in a supplemental proffer to the government and said, okay, you have issues with these areas. Here's extra information to show why he's being truthful and complete as to these areas. And then if the government would have said, well, we still don't think he's being truthful and complete as to the number of crossings and the vehicles used and the timing of the crossings, then you have a debriefing. That's how these work. You send a proffer letter and if the little back and forth doesn't settle the matter, you have a debriefing. And you're right, this was COVID, but we're now in September, October, November. The MCC was never closed. It was a little more difficult to see people, but it was open for business the entire time. And the prosecutor said in this case that if counsel would have reached out and said, I want to do a debriefing, she said she would have set that up, maybe not in person, but video teleconference or telephonic. This case was screaming for a debriefing. And that's what defense counsel should have done in this case, which was when the written proffer wasn't going to suffice, you have a debriefing. And that's what any competent counsel would have done in this situation. Yes, things were a little more difficult logistically because of the timing, but not even asking for a debriefing was shocking to me given that the written proffer was not accepted. There was some back and forth after that between defense counsel and the government apparently. That didn't carry the day. This had to have a debriefing. It was never asked for. Is your position that you just have to have a debriefing, or is it something about this case that means that the lack of a debriefing is dispositive? But I'm trying to figure out, is it just that if you don't have a debriefing, then that is reversible? No, just this case, Your Honor. Most cases don't have debriefings. Because the reason I'm asking, and I know you're going to talk about it, because if you were defense counsel here, and if you think, you know, the government doesn't believe, and you know, and we don't know that, right? We don't know everything defense counsel knew, but you know that he's just going to give a few more details, but you don't think that that's going to convince the government. What do you do as defense counsel in that circumstance? You have a debriefing, and the person is just going to give a few more details to support a story that you know the government doesn't believe, and you don't think the government is probably going to change its mind based on a few more, what the government thinks are false details. You see what I'm saying? I'm not sure if it's not a hard and fast rule that you have to have a debriefing. I'm having trouble with the fact that this case really illustrates that you needed to have it in this case, because he just would have said the stuff that he's already said, and it wouldn't have changed the government's mind, and it doesn't seem like it would have changed the court's mind. I think it might have changed the government's mind. Debriefings are dynamic. The prosecution can ask whatever it wants. That's the Montanez case from the First Circuit where they talked about the real benefits of a debriefing and the dangers of just proceeding with a written proffer, and so you get everyone together in the room, the defense counsel, the defendant, the interpreter. There's also risks, too. It could harden the government's position. What's the risk in this case? It's already a 10-year mandatory minimum. The government said no. The defense has filed nothing with respect to safety valve in the memorandum for sentencing. The risk might be that you feel like you get to go to the court and convince the court instead of convince the government. You're not going to make any progress with the government, and so you go to the court and see if you can convince the court. That would be the idea as the defense counsel. The briefing is not going to help me with the government, so I'm just going to go to the court and see if I can win over the judge. Correct. But if I really harden the government, they would oppose more. I don't know. It just doesn't seem – I guess what we're all struggling with. You could have said he came in and lied to my face. That would carry quite a bit of weight. The Montanez case raises an interesting point. They say – so at the sentencing hearing, even more stuff came up during sentencing. The government said, well, he's responded to these things, but there's these other things, and the DMV thing came up, and other things came up. And so it was kind of the Wild West of safety valve at sentencing because things just kept coming up that weren't even raised before. If you have a debriefing, it gives the government agent and the prosecutor a chance to ask whatever they want, and it gives a defendant a chance to answer questions, give context. And when you meet someone in person, it's a lot different from just reading what they write. I have your argument, counsel. Thank you. I know you're over time – our questioning took you over time, but I'll put two minutes back for your rebuttal. Thank you very much. Good morning. May it please the Court. Benjamin Hawley for the United States. The reason the district court denied the safety valve adjustment here was because of the content of the information provided, not the timing and not the format that it was provided. As the court has pointed out, essentially the same information that the defendant now says he would have provided was provided to the court, to the government, at the sentencing hearing, and that didn't seem to make a difference, or rather did not make a difference. The one question I have for you is it seems to me that the district court had the wrong standard in his mind when he was making this judgment. He thinks that it's the government's call about whether the person is truthful or not, and not the court's call. That's flatly contrary to the statute. Right. So given that the district court is working with the wrong lens, how can we really know prejudice? So two responses to that. The first is that the court said kind of independent of the — because the prosecutor pushed back on exactly that point, and the court said kind of regardless, I have the same concerns that you do. So even if I'm looking at this, you know, on my own independently, I have the same concerns. So even applying the correct standard of the court making the decision, it would have come out the same. The second is that ultimately this court is reviewing not whether the court should have granted safety valves, but whether there's something different that defense counsel could have done or should have done to make that difference. And here there's nothing there because, again, the district court was saying the information I'm receiving, I forget the timing, I'm not concerned about the timing on the merits, is not sufficient. He's not telling the truth. They filled in some of the details at the sentencing hearing and, again, in the declaration, but those details didn't change the fundamental concern that the — Well, there's one factual thing that I don't know what to make of, and the district court, again, erroneously says when considering this issue that there had been a proffer, there had been an in-person debrief. And so, again, I'm trying to think of, like, as a matter of common sense, it seems that the in-person interaction is probably the best way to go if you're trying to convince somebody that you're being truthful. I mean, you have the risks, right, if you're actually not being truthful, but we'll set that aside for a second. That's probably the best way to go. If the district court has in its mind when it's deciding this question that's happened and it actually hasn't happened, then I'm back to do we have a problem in terms of can we really know what the district court would have done had it been — had it properly understood what had happened. And we don't because, first of all, so I point to pages 103 and 104 of the record. That's at the sentencing hearing where the court says, well, you know, I've reviewed all of these things, including I know there was an interview with the defendant. He uses the word interview as opposed to debrief or anything else. The prosecutor on the next page immediately pushes back and says, no, Your Honor, because of all these COVID restrictions, this was done by proffer. And the court immediately accepts that correction. Oh, I'm sorry. I was mistaken. You're right. So — You made the mistake later, right, when it actually says — if we assume for a second it's a mistake when the court used the word debrief. That was later, right, when the court was —  So what do we make of that? I mean, it does seem the court was corrected and on the record and understood. But then it almost reverted back to its mistake. And I'm trying to — do we use the earlier fact that the court seemed fine? And I'm assuming it was just riding up in kind of confusing cases. I don't know. What do we make of that? So that would be correct if the court assumes that debrief only means an in-person debrief? Let's just assume that for a second. Okay. So assuming that, then, yes, the court would be wrong. And this is maybe 11 months later, I think, when we're considering the ineffective assistance collateral attack. There, then, my response would be, assuming that he was wrong about that, is it still didn't matter because it was the content of the information the court was concerned with. It wasn't the format. In fact, there was nothing in the analysis that turned on, well, if this was done in person or because this was done in person, therefore — And the idea is if the two of you would have been standing there right then and said, no, no, same thing you said 11 months earlier, the court would have done the same thing it did 11 — oh, yeah, okay, that's right, I'll cross it out and not say anything. Exactly. Because there — and obviously the debriefs, you know, the in-person debriefs are done without the court there, right? The judge is only going to hear about it kind of secondhand regardless. So the best shot the defendant would have had in that situation is, as you were discussing earlier, to persuade the government and then maybe kind of bring the government along to persuade the court. Well, what about the idea that it seems like defense counsel is really focused on this morning is that a debrief is just different. You know, it does have some resonance, the idea that, like, you get everybody in a room. That's why mediations sometimes work, sometimes they don't. Right. So what about that idea? At the end of the day, this is ultimately what the defendant is saying. And so, again, we have that declaration now 11 months into the process after the sentencing where he's not coming off the store, he's providing — Right, but I think counsel's point is that an in-person debriefing is very dynamic, right? The government can probe, the government can question, the government can ask him as many questions as it wants to, to be fully satisfied that he's given a complete answer. There are definitely risks with bringing your client in, but at the stage that the case was at, what choice did the defense really realistically have? That was his best shot, right? The government already thinks that you're lying.  Let the government — bring your client in, let the government ask as many questions as it wants until it feels satisfied. That was his best shot. Now, we don't have, given the statements, and even now we don't have maybe enough details that would have satisfied the government, but what I hear defense counsel saying is that that was the only thing that they could have done to really change the government's mind. Right, so I think the concern there is if this court holds it was ineffective assistance, either kind of generally or on these specific facts, to not do an in-person debriefing, that's getting very close to then having a bright-line rule of you have to do an in-person debrief in essentially all of these cases, or at least when the government is initially pushing back. And the question isn't could counsel have done more, it's was it so far below the objective standard of reasonableness of what a defense counsel should be doing in this case. And because there are risks to doing that debrief, particularly if you have a client, as certainly the government believes here, was sticking with a story that just was not true, that's not a bad tactical decision to kind of keep him away from a, you know, experienced prosecutor who's functionally going to cross-examine him during the debrief and potentially come in with more information to the district court of saying here are additional things he lied about or here are additional concerns we have. I mean, it could be a Hail Mary shot in this case, but not taking that. What's the practice in San Diego for these debriefings? Are they usually in person for safety- Outside the COVID context, a lot of them are, but there are plenty. I don't, I would defer to defense counsel on the percentage that he would have more experience with some of that, but I would say half or more are done by letter. If then there is pushback, then I think a lot of the times you do have at the very least a more conversation, potentially another letter. And then a lot of times then you do a sit down, but it is not every case that you have an in-person debrief, largely just because of the volume. And if, you know, someone's given a post-arrest statement that's lengthy and has a lot of information, we get a little bit more in a letter. It would be fairly unusual not to have an in-person debrief if the government is not going to agree to give safety- I would agree it would be probably unusual, but I would not agree that it then is ineffective assistance of counsel to avoid that or to not put your client in that situation. And again, here with the COVID restrictions, that doesn't make it impossible, but it certainly would have made things more difficult in terms of having that give and take. There's one other thing I want to ask you about that I'm concerned about with what, how the district court did this. I'm looking at the, his 2255 decision. Right. And it seems to be that the district court thinks that because the defendant lied the first time or what was perceived to be a lie at the first time, that he didn't get a, there was no reason to give him a second, I think he even says second bite of the apple. Again, I think that's flatly contrary to our law, that as long as the government can make an assessment that somebody is being truthful at any point before sentencing, even if they, their story has changed, if they've lied and they have to come in and say, I'm sorry, I'll give you the real story now. So what do we do with that in terms of the district court is saying, I didn't need to give any more continuances, I didn't need to give any more time for any more work to be done because it wouldn't have mattered anyways because he lied the first time and he doesn't get a chance to correct. So there I think the court is relying on the not later than the time of sentencing portion of the requirement and saying, you know, you gave this letter ahead of time and now I'm hearing at sentencing what the story is. I don't need to continue it to have you now kind of add more or maybe even change your story and come back for another sentencing. So I would agree it would be different if all of this had happened kind of before the sentencing hearing and then at the sentencing hearing the defendant says, okay, here's actually what happened. But didn't he say something similar at the sentencing hearing? He did not. The court did not continue it another time. But this is while they're talking about, you know, the merits of it and here's all this extra information that counsel is providing. The court is hearing it. Some judges would continue it and basically tell the defendant, kind of give them a stern speech of you really need to be truthful, let's try this again. But I don't think there's any requirement that the court continue it to give the defendant, you know, another shot at providing yet more information or, again, from the government and the court's point of view, truthfully. Yeah, and of course, I mean, here we're not looking at whether the district court erred in not giving a continuance. We're looking at the attorney and the attorney's failures and whether they are material, like whether they would have made a difference. So I'm still wrestling with it really does seem like the defense attorney did not do what was needed here in terms of making sure that he made a full record for his client in terms of the safety valve. And we've got the district court who's seeing things at least two ways incorrectly and trying to assess, like, well, if he had actually done what needed to be done, would it have made a difference? And our answer to that is no, because the court repeatedly said, and the prosecutor for that matter, too, the information is not credible. It wasn't the format. It wasn't the timing. It was this information that you were telling me is just not true, and therefore you don't qualify for safety valve. Defense counsel could and should have done more in the sense of, you know, it's generally not a good idea to make a federal judge angry and just collateral issues of timing and such. But the court expressly said that's not my concern. My concern is the content. That content is not true. Therefore, safety valve does not apply. Thank you. Thank you. The typical way this works in San Diego, there's a lot of drug cases. Back when they were charging them as mandatory minimums, you send a proffer letter to the government, or they would usually say, send me a proffer letter and I'll consider that for safety. You send a proffer letter to the government. And in a lot of cases, that proffer, in some cases, that proffer letter is acceptable. I think in more cases, there's a response, hey, what about this? He didn't touch on this. You send a supplemental proffer. And in most cases, these cases are settled in terms of safety valve in writing between the prosecutor and the defense attorney with written communications. If that doesn't work, you have to have a debriefing. You have to have a debriefing for the reasons why your honors have discussed. The dynamics of the meeting where the government can look the person in the eye and the defendant can look the government agents in the eye and explain what happened. This wasn't like Mr. Costrase had some crazy story in this case that he was trying to sell to the government. These were details about where he was at certain times and why he drove other vehicles. I like how this works. Practically, even though the statute says that it's really the court that needs to make a decision about whether the person is being truthful, practically, is that not true? Was the district court actually right as a practical matter? Because the district court is not in the meeting, doesn't hear the person's story. It's not like you have an evidentiary hearing. You stick the guy on the stand. You just hear from the government. And you hear what the government's meeting was and whether they believed him or not. And you probably just defer to that. Is that how it really goes? I disagree with that, your honor. If a case like this for someone who's safety valve eligible and looking at a much shorter sentence than 10 years, if the government declines to recommend safety valve after proffers or after a debriefing, you have to make your record. And you make your record by filing declarations, by requesting an evidentiary hearing before the court. And those happen. Evidentiary hearings as the safety valve happen where the district court takes its obligation seriously to do an independent de novo review of the issue and gives all the evidence. And the defendant can testify as to what happened in the case. And the government agent or whoever can testify and say why they think that's not credible or not true. And the development of the record is crucial. First step, try to do it by proffer. Second step, try to do it by debriefing. And if that fails, you make your record for the district court to make its independent decision. None of that happened in this case. Thank you very much, counsel, for your very helpful arguments this morning. The matter is submitted.
judges: NGUYEN, FORREST, VANDYKE